UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CIVIL ACTION |
| VERSUS | NO:   09-3770 c/w: 09-3771, 09-3772, 09-3773, 09-3774, 09-3775, 09-3776, 09-3777, 09-3778, 09-3779, 09-3781, 09-3782, 09-4241 |
| 0.073 ACRES of LAND, MORE OR LESS, SITUATE in PARISHES of ORLEANS and JEFFERSON, STATE of LOUISIANA, and PETER B. ANDERSON, *et ux.* et al. | SECTION: "C" (2) |

## ORDER & REASONS

Before the Court is Motion for Judgment on the Pleadings filed by Plaintiff the United States and Motion for Partial Summary Judgment filed by Defendant Mariner's Cove Townhomes Association ("MCTA").  (Rec. Doc. 51, 59).  Having reviewed the record, memoranda of counsel, and the law, the United States' Motion is GRANTED and MCTA's Motion is DISMISSED AS MOOT for the following reasons.

## I. BACKGROUND

On June 5, 2009, the United States filed this eminent domain proceeding against 0.73 acres of land comprising fourteen of the 58 townhomes in Mariner's Cove Development ("Development"), a residential community located near Lake Pontchartrain and the 17th Street Canal, to facilitate the United States Corps of Engineers' ("Corps") access to the pumping station on the canal.  (Rec. Doc. 1).   MCTA is a non-profit corporation that provides residential

services to the individually-owned townhouses in the Development in exchange for periodic assessments pursuant to the "Declarations of Servitudes, Conditions and Restrictions of Mariner's Cove Townhomes Association, Inc." ("Declarations), recorded on July 28, 1977. (Rec. Doc. 20 at 2).  MCTA filed an Answer and Declaration of Interest ("Answer") under Federal Rules of Civil Procedure 71.1 and 13, seeking a ruling that "the Corps is obligated to pay the yearly assessments arising from the Declarations encumbering the properties since its occupation in 2005, and for the reasonable lifetime of a townhomes association such as Mariner's Cove." *Id.* at 5.  Alternatively, MCTA seeks a "lump sum payment which, if invested conservatively and adjusted for inflation, is a principal amount capable of generating annual interest sufficient to make up the shortfall in the funds owed." *Id.*

The United States' 12(c) Motion argues that this Court should dismiss MCTA's claims on the ground that (1) MCTA has no continuing right to levy assessments on the taken property because when the United States condemns property, it takes perfect, unencumbered title; and (2) the loss of MCTA's right to assess the taken property is not compensable under federal or Louisiana state law.  (Rec. Doc. 51 at 2).  MCTA's Motion for Partial Summary Judgment urges this Court to rule that the United States must compensate MCTA for the diminution of its assessment base resulting from condemnation because such a loss is compensable under federal and Louisiana state law.  (Rec. Doc. 59 at 8-14).  The parties agree that federal procedural and substantive law controls in condemnation proceedings, and that courts may look to state law to determine whether a property interest is compensable under the United States Fifth Amendment Takings Clause.  (Rec. Doc. 51-1 at 7, Rec. Doc. 52 at 10, 13).

**II. LAW & ANALYSIS**

After the pleadings are closed, but within such time as not to delay trial, any party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings under Rule 12(c) is subject to the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002). In determining whether dismissal is appropriate, the court must decide whether the facts alleged in the pleadings, if true, would entitle the plaintiff to a legal remedy. *Ramming v. U.S.*, 281 F.3d 158, 162 (5th Cir. 2001); *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994). When considering a Rule 12(c) motion, the court must construe the allegations in the complaint in the light most favorable to the non-moving party, but conclusory allegations and unwarranted deductions of fact are not accepted as true. *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). Judgment on the pleadings is appropriate only if there are no disputed issues of material fact and only questions of law remain. *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 (5th Cir. 1998).

MCTA asks that the United States' Rule 12(c) Motion be converted into a motion for summary judgment pursuant to Rule 12(d), which would allow the Court to consider matter outside the four corners of the pleadings, on grounds that pleadings "rarely provide a sufficient factual basis for a determination on the merits" and "the great majority of Rule 12(c) motions are converted into summary judgments." (Rec. Doc. 52 at 9). MCTA provides no argument as to how this principle applies in this case, stating only that a judgment on the pleadings would deprive MCTA of the opportunity to explain or refute facts before the Court and "would

abrogate the rule that all facts pleaded by the nonmover are taken as true." *Id.* This Court is unpersuaded. First, MCTA has preserved its opportunity to refute facts, as shown in its Opposition to the United States' Motion. *Id.* Second, as demonstrated below, this Court adheres to, and does not abrogate, the 12(c) principle that facts are viewed in the light most favorable to the nonmover. Accordingly, the Court shall address the United States' Motion as filed, without converting it into a motion for summary judgment. In granting the United States' Motion, this Court disposes of the case and thus declines to address the merits of MCTA's Motion.

**A. Disputed issues of material fact**

MCTA argues that seven issues of material fact remain, such that judgment on the pleadings under 12(c) is inappropriate. This Court disagrees. First, MCTA argues that "the government ignores the fact that the ancestors in title of the Mariner's Cove properties filed [the Declarations] which, under Louisiana law, establish real rights in immovable property that apply to all successive owners [...]." (Rec. Doc. 52 at 8). The United States expressly acknowledges that MCTA filed and recorded the Declarations, citing to MCTA's Answer and the Declarations themselves. (Rec. Doc. 51-1 at 3). The United States objects only to the second part of MCTA's argument, which addresses the issue of law whether a real covenant running with the land can burden property that the United States acquired through a condemnation proceeding.

Second, MCTA urges that the United States "ignores the similarity of the facts in [*Adaman Mut. Water Co. v. United States*, 278 F.2d 842 (9th Cir. 1960)] to the facts at bar." (Rec. Doc. 52 at 8). Any objection by the United States on this point is plainly tied to legal analysis, not to a dispute about the factual events at the heart of this case. Third, MCTA states that the United States "ignores that the MCTA owns no property in common with the owners of

the Mariner's Cove properties." *Id.* at 8. Yet the United States explicitly agrees, stating that "MCTA adamantly states that it has no property interest in the Mariner's Cove development." (Rec. Doc. 51-1 at 13). Fourth, MCTA argues that the United States disagrees that "MCTA has been damaged by the government's abrogation of the obligations it has as owner of encumbered properties." *Id.* at 9. However, the United States specifically acknowledges that MCTA "may be damaged by the instant takings [...]." (Rec. Doc. 51-1 at 11). Its objection pertains not to a factual issue but to whether those damages are compensable under the law. *Id.*

As required by Rule 12(c), the Court takes as true the allegations in MCTA's Answer for purposes of this Motion, including the remaining issues that MCTA characterizes as issues of fact in its Opposition which are referencing allegations in MCTA's Answer. (Rec. Docs. 52, 20). Specifically, the Court finds that "MCTA is a nonprofit corporation whose sole existence is to fulfill the obligations it has to the property owners it was created to serve [...]"; "there are no contracts between the MCTA and any specific owners"; and "the Declarations do not contain a statement that the properties are governed under a condominium regime," as required by the Louisiana Condominium Act, LSA-R.S. 9:1123.101 *et seq*. (Rec. Doc. 52 at 8-9). None of these allegations save MCTA's claims from judgment on the pleadings.

**B. Present interest in the land**

In its Opposition, MCTA repeatedly states or implies that it has a present interest in the land at issue. *See, e.g.,* Rec. Doc. 52 at 8 ("[Declarations] establish real rights [...] that apply to all successive owners [including the United States]."); *Id.* at 9 ("MCTA has been damaged by the government's abrogation of the obligations it has as owner of encumbered properties [...].") (emphasis added). However, it provides no argument supporting that conclusion. In one

portion of their Opposition, MCTA dispute that the United States takes perfect title to properties acquired through condemnation:

> [T]he United States proposes the novel concept that, when the government takes title to a property through condemnation, it takes the property free and clear, and therefore, any rights attached to the land that the government chose not to reserve in favor of the holder of the right would then vanish into thin air because of the "perfect title" it acquired.  This confounding position misses the mark entirely, and brought to its logical conclusion, would erase the concept of just compensation.

(Rec. Doc. 52 at 3).  Yet at another point, MCTA agrees with the Government that condemnation grants perfect title to the United States: "MCTA [...] agrees that the government takes 'perfect title' to any properties taken through condemnation."  *Id.* at 10.  Taken together, these seemingly contradictory statements demonstrate that the MCTA's quarrel with the United States is not over whether it has a present interest in the land but whether its interest in the land prior to the United States' taking is compensable.

Regardless of MCTA's exact position on its present interest, the law is clear that the United States has perfect, unencumbered title of the land at issue in this case, and MCTA has no present interest in the same.  According to the Fifth Circuit, "the default in eminent domain is that a taking in fee simple establishes a new title and extinguishes all existing possessory and ownership interests not specifically excepted."  *United States v. 194.08 Acres of Land*, 135 F.3d 1025, 1029 (5th Cir. 1998) (citing *A.W. Duckett & Co. v. United States*, 266 U.S. 149, 151 (1924).  Once the declaration of taking and the deposit for just compensation are filed, the property vests in the United States under the Declaration of Takings Act.  40 U.S.C. § 3114; *see, e.g., Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 4 (1984); *United States v. 162.20 Acres of Land*, 639 F.2d 299, 303 (5th Cir. 1981).

In this case, the United States filed its complaint in condemnation and declarations of taking of the land at issue on June 5, 2009. (Rec. Docs. 1, 2). The interest MCTA claims in the land – the assessments – were not included as an exception in the declarations of taking. (Rec. Doc. 2 at 6). Thus, any interest MCTA had in the land prior to the taking was extinguished that day. Accordingly, the only issue left for the Court to consider is whether the MCTA's alleged interest prior to the United States' taking is compensable under the Fifth Amendment.

**C. Compensability of MCTA's interest prior to the United States' taking**

    1. Federal law

MCTA's argument relies principally on *Adaman Mut. Water Co. v. United States*, 278 F.2d 842 (9th Cir. 1960). There, the Ninth Circuit held that a non-profit water company's loss of assessments derived from a service that was "directly connected with the physical substance" of condemned land was compensable under the Takings Clause. *Id.* The Fifth Circuit has not addressed the issue whether assessments in connection with condemned land are compensable under the Takings Clause. MCTA points to no other cases adopting the *Adaman* holding besides one case with a similar factual scenario to *Adaman*. *United States v. 129.4 Acres of Land*, 446 F. Supp. 1, 2, 5 (D. Ariz. 1976), *aff'd* 572 F.2d 1385 (9th Cir. 1978).

In *Adaman*, a corporation developed farm land in Arizona and divided it up in family-sized farms as part of a "Reclamation Project" ("Project") to encourage farming in the area. Because the surface area was dry, a water company was organized to collect and distribute underground water to the farms. *Adaman*, 278 F.2d at 844. Distribution to an individual farm occurred pursuant to a stock subscription agreement between the owner of a given parcel of the Project ("landowner") and the water company. Each share entitled the holder to a prorata share

7

of water in exchange for assessments, which paid for the capital investment and operation and maintenance of the irrigation facilities. The Landowners had the option to subscribe to the number of shares equal to the number of acres he or she owned. Non-landowners were ineligible for subscription. The agreement made any stock and the prorata share(s) of water and the accompanying obligation to pay assessments "forever inseparable from the land," even upon transfer and even if the transfer made no mention of the stock or shares of water, but the burden attached only once cultivation of the land had begun. *Id.* at 844, 847. Later, the United States condemned a portion of the land in the Project. *Adaman*, 278 F.2d at 844.

In holding that the water company was entitled to compensation for the diminution of its assessment base under the Fifth Amendment, the Court emphasized the physical element relating the water company to the taken land: "the loss is compensable, for the Government has destroyed an intangible right directly connected with the physical substance of the land condemned." *Id.* at 846. Specifically, the Court reasoned that the water company's physical presence defined the landowners' property rights: "[o]wners by deed held their segment subject to any liabilities or obligations imposed upon the land by reason of its inclusion within the boundaries of [Adaman]." *Id.* Furthermore, a precondition for the subscription agreement to apply, and thus for the stock, water share(s) and assessments to become appurtenant to a particular plot of land, was that cultivation of that land had to begin. *Id.* at 844 ("No assessment can be made, however, upon stock appurtenant to the land that has never been cultivated, that is, until cultivation begins."). The Court was particularly swayed by this argument, supporting its holding by stating that "[a]s an integral facet of the overall plan, the duty to pay assessments attached to all land to which stock was appurtenant and *upon which cultivation had*

*commenced*." *Id.* at 847 (emphasis added).

Like the water company in *Adaman*, MCTA is a non-profit business that collected assessments from landowners in exchange for services pursuant to an agreement that stated that it ran with the land. The Declarations clearly state that any "covenants, servitudes, conditions, restrictions, uses and obligations [...] shall be deemed to run with the land." (Rec. Doc. 20 at 3, Exhibit 2 at 2). They further state that MCTA is entitled to "levy and collect [...] assessments from owners" and required "to provide maintenance, management, insurance, and such other expenses as are enumerated in these Declarations." (Rec. Doc. 20 at 3, Exhibit 2 at 8). These tasks include "maintenance of all streets and pedestrian walkways within the project, lawn maintenance and landscaping, and maintenance of water and sewer service." (Rec. Doc. 20, Exhibit 2 at 2). An "owner" is the "record Owner [...] of any lot in the within project, together with improvements thereon." *Id.*

However, the similarities between the water company in *Adaman* and MCTA end there, and they do not warrant application of *Adamant*'s holding to this case. First, in *Adaman*, the assessments were directly connected with the physical substance of the land – the water underneath the land which it served. In contrast, MCTA's assessments were not in exchange for extracting, using or distributing a physical element of Mariner's Cove; instead, they were in exchange for residential building and landscape upkeep. Further, unlike in *Adaman*, where the purpose of the project was "to create an integrated, agricultural development," Mariner's Cove was a residential development, not tied to cultivating or making productive use of the land. *Id.* at 846. Lost assessments were held compensable in *United States v. 129.4 Acres of Land*, but the assessments there were derived from prorata benefits of water delivery services, including

operation and maintenance of water delivery facilities, in an agricultural development.  446 F. Supp. at 2, 5.  Again, in contrast, MCTA's assessments were collected not in exchange for the provision of a natural element physically extracted from the land at issue, but rather for residential building, street, and lawn upkeep.

Second, unlike in *Adaman*, where the water company's physical presence on the land limited landowners' property rights, MCTA did not encroach on Mariner's Cove owners' property rights.  Indeed, MCTA states that it had no property interest whatsoever in the Mariner's Cove development and nowhere indicates that it physically defined the owners' rights.  *See* Rec. Doc. 20 at 4 (stating that MCTA adopts its pleadings filed in Civil Action 08-3198 under Rule 10(c)); Rec. Doc. 1 at 6).  Third, the subscription agreement swayed the *Adaman* Court not because it stated that assessments ran with the land, but because the contract conditioned assessment on the landowner's physical cultivation of the land.  *Adaman*, 278 F.2d at 847.  In contrast, the Declarations do not create any precondition for assessments to run with the land other than the owner's record ownership of the land.  MCTA has not shown how this relationship is analogous to that in *Adaman*, warranting the holding that MCTA's loss of assessments is compensable because those assessments were "directly connected with the physical substance of the land."

2. Louisiana State Law

Although federal substantive and procedural law are binding in condemnation proceedings, courts may consider state law to determine whether a property interest is compensable.  *See United States v. 131.68 Acres of Land*, 695 F.2d 872, 875 (5th Cir. 1983).  Under Louisiana law, provisions of building restrictions that restrict use to residential purposes

only are not compensable. *See Gremillion v. Rapides Parish Sch. Board*, 134 So.2d 700 (La. App. 3 Cir. 1961); *rev'd on other grounds*, 140 So. 2d 377 (La. 1962) (holding that school board's use of property for school purposes, in violation of otherwise binding covenant restricting such property to residential use, was not compensable); *Hospital Service Dist. No. 2 of St. Landry Parish v. Dean*, 345 So.2d 234 (La. App. 3 Cir. 1977) (holding that district's construction of hospital on land restricted under restrictive covenant to residential use was not compensable). However, as MCTA states in its Opposition, Louisiana courts have not specifically addressed whether building restrictions that require affirmative action, or building restrictions in general, are a compensable property interest. (Rec. Doc. 52 at 14). Given this silence, and given that federal law controls on the issue of compensability, Louisiana state law does not disturb this Court's finding MCTA's claimed interest is not compensable. Construing the allegations in MCTA's Answer in the light most favorable to MCTA, the Court finds that MCTA's interest in the fourteen townhomes is not compensable.

Accordingly,

IT IS ORDERED that the United States' Motion for Judgment on the Pleadings is GRANTED. (Rec. Doc. 51).

IT IS FURTHER ORDERED that Mariner's Cove Townhomes Association, Inc.'s Motion for Partial Summary Judgment is DISMISSED AS MOOT.

New Orleans, Louisiana, this 9th day of November, 2011.

_____
**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**